UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CATHERINE FANTAUZZO,

    Plaintiff,

v.                                                  Civil Action No. 2:21-CV-4

TRISTAN SPERRY,

    Defendant.

**OPINION AND ORDER**

In this diversity action arising out of a motor vehicle accident, Defendant Tristan Sperry ("Defendant" or "Sperry") moved to exclude testimony from Plaintiff Catherine Fantauzzo's ("Plaintiff" or "Fantauzzo") treating physicians. (ECF No. 24). The sole issue in this motion is the treating physicians' causation opinions, with Sperry arguing that Dr. Charles E. Shuff ("Dr. Shuff") and Dr. Martin V.T. Ton ("Dr. Ton") cannot offer reliable opinions that the motor vehicle accident caused Plaintiff's spinal injury or that the treatment she received was medically necessary and causally related to the accident. Def.'s Br. in Supp. of Mot. (ECF No. 25, at 2) ("Def.'s Br."). Fantauzzo opposed the motion, (ECF No. 26-1) ("Pl.'s Opp'n"), and Sperry replied, (ECF No. 27) (Def.'s Reply). The court heard oral argument on the motion. For the reasons explained below, the court DENIES Defendant's motion.

I.      **BACKGROUND**

On January 2, 2019, Sperry and Fantauzzo were involved in a rear-end motor vehicle collision ("the MVA"). Am. Compl. ¶¶ 4-5 (ECF No. 13, at 1). The only contested issues in the case are causation and damages. See Def.'s Br. (ECF No. 25, at 1). Fauntauzzo alleges that the MVA aggravated underlying conditions and injured her lumbar spine, for which she thereafter

needed surgery and associated pain management treatment. Pl.'s Opp'n (ECF No. 26-1, at 1-2). In her discovery responses, Plaintiff identified Dr. Shuff and Dr. Ton as treating physicians who, through "the ordinary course" of treating Fantauzzo, developed opinions that the MVA caused her injuries. Pl.'s Answers to Def.'s Interrogs. (ECF No. 25-1, at 3) ("Interrog. Ans."); see also id. ¶¶ (l); (m) (ECF No. 25-1, at 5-7, 7-9). Sperry disputes the reliability of this causation testimony, and to some degree Plaintiff's compliance with the Rule 26(a)(2) disclosure requirements. Def.'s Br. (ECF No. 25, at 2).

A. **Plaintiff's Witness Testimony from Dr. Shuff and Dr. Ton**

Plaintiff introduces both Dr. Shuff and Dr. Ton as treating experts who will testify that the MVA "aggravated her underlying normal age-related changes in her lower back causing the radicular symptoms for which she underwent her course of treatment and ultimately required surgery." Pl.'s Opp'n (ECF No. 26-1, at 1-2). In her answers to Sperry's interrogatories, Fantauzzo designated the opinions and bases for the treating physicians' opinions. Interrog. Ans. ¶¶ (l); (m) (ECF No. 25-1, at 5-7, 7-9). Neither physician signed the disclosure. See Interrog. Ans. (ECF No. 25-1). Plaintiff did not file a separate Rule 26(a)(2)(C) expert report for either Dr. Ton or Dr. Shuff. Pl.'s Opp'n (ECF No. 26-1, at 2 n.1, 10); Def.'s Reply (ECF No. 27 n.1).

In the interrogatory disclosure, Plaintiff summarized each physician's course of treatment, and then clarified that, in rendering their opinions, both physicians would rely upon that treatment, as well as "the past medical history provided by Ms. Fantauzzo, the history of injury provided by Ms. Fantauzzo, review of diagnostic testing, [and] exam findings consistent with lumbar radiculopathy . . . ." Id. ¶ (l)(10) (ECF No. 25-1, at 6); id. ¶ (m)(11) (ECF No. 25-1, at 8). Plaintiff further disclosed, as relevant to this motion, that Dr. Shuff and Dr. Ton would testify that Fantauzzo

2

> suffered an injury to her lumbar spine in the nature of a lumbar sprain/strain, lumbar disc injury at L4-5 and/or an aggravation/exacerbation of her pre-existing age-related/degenerative findings at the L4-5 thereby causing her symptoms and need for medical treatment, all the symptoms of which were due to and caused by her 1/2/19 motor vehicle collision . . . .

Id. Dr. Shuff would similarly testify that all Plaintiff's treatment was medically necessary to treat injuries that the MVA caused. Id. ¶¶ (I)(13)-(14) (ECF No. 25-1, at 7). Following this disclosure of testimony, Sperry's counsel deposed both doctors regarding their expected testimony. Shuff Dep. (ECF No. 25-2); Ton Dep. (ECF No. 25-3).

1. **Dr. Charles E. Shuff**

Dr. Shuff is an orthopedic spine surgeon practicing at Vann Virginia Center for Orthopaedics. Interrog. Ans. ¶ (A) (ECF No. 25-1, at 3). Dr. Shuff first saw Plaintiff in January 2019, shortly after the MVA, when she "present[ed] with lower back discomfort with gluteal discomfort described as steel rods pressing against the buttock area with radiative symptoms into the posterior thigh and over time into the lower extremities crossing the knee into the back of the calf area." Shuff Dep. 16:5-11 (ECF No. 25-2). Fantauzzo mentioned the MVA during her first visit. Id. 18:6-20; 50:7-17. On May 20, 2019, Dr. Shuff performed a decompressive lumbar laminectomy on Plaintiff. Id. 10:22; 52:12-14. Dr. Shuff saw her for a follow-up surgical appointment in June 2019 and again in 2020. Id. 57:17; 60:5.

Defendant deposed Dr. Shuff on September 9, 2021. Shuff Dep. (ECF No. 25-2). During initial questioning by Sperry's counsel, Dr. Shuff agreed that Plaintiff's "symptoms . . . [were] due to the progression of her advance[d] degenerative issues in her lumbar spine . . . ." Id. 54:13-17 (answering "That's correct"); see also id. 58:20-59:9 (answering affirmatively "that she had advanced degeneration"). He also said it was "fair" to state that "other than Ms. Fantauzzo telling [him] that she was in an accident, [he] had no information regarding the accident; how it occurred or whether [Plaintiff] was injured . . . ." Id. 81:13-18. Dr. Shuff's office notes—which Sperry's

3

counsel used in deposing him—record that Fantauzzo's symptoms "suggest[ed] more of a degenerative disc disease kind of component and a disc pathology . . . ." Id. 17:4-8. His office notes did not "reflect[] . . . the opinion that the car crash [wa]s a direct causation or an ancillary temporal assignment to her clinical symptoms." Id. 76:8-12.

However, in later questioning, Dr. Shuff ultimately agreed that, "[b]ased on the information that [Plaintiff] provided to [him] in the History, [and] what's in the records, [he was] able to form [his] opinion that the motor vehicle collision aggravated, or exacerbated, her degenerative condition in her spine[.]" Id. 88:10-20. Dr. Shuff also agreed that he "didn't specifically write that [opinion] in [his] reports because" he ordinarily does not write his reports for the purpose of providing legal opinions. Id. 88:22-89:4. He stated that "[r]egardless of [his] record assessment, the opinion" he held was "based on temporal association, with symptoms, clinical complaints." Id. 75:8-13.

### 2. Dr. Martin V.T. Ton

Dr. Ton specializes in anesthesiology and pain medicine. Interrog. Ans. ¶ (B) (ECF No. 25-1, at 3). Dr. Ton first saw Plaintiff on February 12, 2019. Ton Dep. 12:23 (ECF No. 25-3). Fantauzzo mentioned that she had been in the MVA in January. Id. 12:22-13:5. She complained "of lower back pain and pain that was radiating down the back of both legs." Id. 13:2-3. Plaintiff treated with Dr. Ton for pain management until December 17, 2020. Id. 40:16-20.

Defendant deposed Dr. Ton on August 23, 2021. Ton Dep. (ECF No. 25-3). As with Dr. Shuff, Sperry's counsel examined him by closely tracking his records of treatment. Dr. Ton testified that he had not "performed a differential diagnosis or evaluation as to whether her symptoms [were] related to the car accident[.]" Id. 17:23-18:3. He also agreed with counsel that he had not formed a causation opinion "[a]s of the last office visit" in December 2020. Id. 41:15-

18:2. He also testified that he had not been asked about causation until the current litigation, id. 42:10-43:15, and admitted that he reviewed "additional medical history in the form of records" provided by Plaintiff's counsel, id. 44:13-19.

However, Dr. Ton also said that if he had been "asked about causation, it would [have been] based upon what she told [him] and the findings, the diagnostic findings at the time that [he] saw her and during [his] treatment." Id. 43:22-25. He was "not creating notes for the purposes of legal cases," and that he would only record such opinions if he was "asked and a patient has a lengthy discussion about" it. Id. 48:5-10; 48:21-23. He agreed that it was his "opinion that the motor vehicle collision [was] the cause of the symptoms for which [he was] treating [Plaintiff.]" Id. 48:24-49:5. He also agreed that this opinion was "based on the history and the diagnostic findings that [he] had available to [him] at [his] very first visit[.]" Id. 49:8-11. Lastly, Dr. Ton testified that he reviewed Plaintiff's other treatment records to understand her "[p]reexisting issues." Id. 44:16-21.

**B.     Current Motion**

Sperry moved to exclude both Dr. Shuff and Dr. Ton as unreliable under <u>Daubert v. Merrell Dow Pharms, Inc.</u>, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. (ECF No. 24). Defendant argues that Dr. Shuff conceded that "arthritis and degenerative disease in her lumbar spine" caused her symptoms. Def.'s Br. (ECF No. 25, at 18). Sperry similarly argues that Dr. Ton never assessed causation while providing treatment. Id. at 19. Sperry contends that the treating physicians' testimony thus constitutes "speculative and unreliable" ipse dixit opinions. Id. at 19, 21-21. Sperry also moved to exclude Dr. Ton's causation opinions as retained expert opinions. Def.'s Reply (ECF No. 27, at 7). Defendant asserts that opinions formed post-treatment transform "a treating doctor [in]to a retained expert, which would require a Rule 26(a)(2)(B) expert report."

Def.'s Br. (ECF No. 25, at 20-21 n.5) (citing Hall v. Sykes, 164 F.R.D. 46, 48-49 (E.D. Va. 1995)). Sperry interprets Dr. Ton's deposition testimony as conceding that he developed his causation opinions for litigation, arguing that without a report (which was not provided here), these opinions are inadmissible. Def.'s Reply (ECF No. 27, at 7).

Plaintiff opposed Defendant's motion, arguing that the physicians' opinions are reliable because a "review of the testimony from both Dr. Shuff and Dr. Ton clearly shows they hold opinions in this matter which they did not explicitly state in their treatment records." Pl.'s Opp'n (ECF No. 26-1, at 8). Plaintiff argues that deposition testimony shows that the treating physicians believe the MVA aggravated Fantauzzo's injuries. Id. at 9. Regarding Dr. Ton, Plaintiff argues that he is not a retained expert, and even if he is, the failure to provide an expert report was substantially justified or harmless. Id. at 9-11. Defendant replied, (ECF No. 27), and with the matter fully briefed, the parties appeared by counsel for oral argument on November 5, 2021.

## II.    LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure requires parties to disclosure the identity of any witnesses providing expert testimony under Rule 702 the Federal Rules of Evidence. See Fed. R. Civ. P. 26(a)(2)(A). While Rule 26 delineates the type of expert and associated disclosure requirements, Rule 702 requires the disclosed expert's testimony to be sufficiently reliable.

### A.    Federal Rule of Civil Procedure 26 and the Requirement for an Expert Report

Rule 26 requires any expert "retained or specially employed to provide expert testimony in the case" to provide a written report of his or her opinions. Fed. R. Civ. P. 26(a)(2)(B). However, a non-retained expert is not required to produce a report. Id. 26(a)(2)(C). Rather, the party must disclose only the subject matter of the non-retained expert's evidence and a summary of his or her facts and opinions. Id. Even if an expert fails to make Rule 26 disclosures, a court can still admit

the testimony if "the failure was substantially justified or is harmless." Id. 37(c)(1). District courts use five factors to determine whether the omission was substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). The proponent bears the burden of proving substantial justification or harmlessness. Id. at 596.

**B.    Federal Rule of Evidence 702 and Daubert**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. United States v. Wilson, 484 F.3d 267, 274-75 (4th Cir. 2007). Under the Rule:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In other words, expert testimony is admissible under Rule 702 "if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999) (citing Daubert, 509 U.S. at 592).

The first prong requires the court to examine "whether the reasoning or methodology underlying the expert's proffered opinion is reliable" and the second prong asks the court to analyze "whether the opinion is relevant to the facts at issue." Id.; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) ("[T]he Federal Rules of Evidence 'assign to the trial judge

7

the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" (quoting Daubert, 509 U.S. at 597)); Oglesby v. General Motors Corp., 190 F.3d 244, 249-50 (4th Cir. 1999) ("[A] district judge, considering a proffer of expert testimony under Federal Rule of Evidence 702—whether based on scientific, technical, or other knowledge -- [the court] must, in determining its admissibility, ensure that the evidence is 'not only relevant, but reliable'" (quoting Daubert, 509 U.S. at 589)). That is, "a reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby, 190 F.3d at 250 (4th Cir. 1999) (citing Daubert, 509 U.S. at 590, 592-93). "The proponent of the testimony must establish its admissibility by a preponderance of proof." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001) (citing Daubert, 509 U.S. at 592 n.10).

Thus, the District Court serves as a gatekeeper to assess whether the proffered evidence is reliable and relevant. Kumho Tire Co., 526 U.S. at 141. But the gatekeeper function does not require that the Court "determine that the proffered expert testimony is irrefutable or certainly correct" because expert testimony is "subject to testing by 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" United States v. Moreland, 437 F.3d 424, 431 (4th Cir. 2006) (quoting Daubert, 509 U.S. at 596). There is no "mechanistic test for determining the reliability of an expert's proffered testimony; on the contrary, 'the test of reliability is flexible and the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" Peters-Martin v. Navistar Int. Trans. Corp., 410 Fed. Appx. 612, 617 (4th Cir. 2011) (quoting United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007) (internal citations and quotations omitted).

### III. ANALYSIS

**A. No Expert Reports Are Required from Dr. Ton and Dr. Shuff as Treating Physicians.**

As treating physicians, Dr. Shuff and Dr. Ton[1] are not considered retained experts, and therefore they are not required to provide signed expert reports under Rule 26. Perkins v. United States, 626 F. Supp. 2d 587, 590 (E.D. Va. 2009). However, Sperry argues that "any causation opinions formed . . . for the first time after the treatment concluded" would require a treating physician to submit an expert report. Def.'s Br. (ECF No. 25, at 20-21 n.5). Because Dr. Shuff's and Dr. Ton's causation opinions are based on information acquired while treating Fantauzzo, the treating physicians are not retained experts. Furthermore, their opinion was adequately disclosed, and any perceived failure to disclose their opinions is substantially justified and harmless in light of their clarifying deposition testimony.

**1. The Physicians' Opinions Are Based on Their Treatment of Fantauzzo.**

Treating physicians are not retained experts. Perkins, 626 F. Supp. 2d at 590. "[A] treating physician [who] forms an opinion of the causation of an injury during the <u>ordinary</u> treatment of the patient . . . may express the opinion without disclosing a written report." Id. (citing Hall, 164 F.R.D. at 48) (emphasis in original). However, if a treating physician bases his or her "medical opinion . . . on factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert report." Hall, 164 F.R.D. at 48-49.

The admissibility of a treating physician's causation opinions therefore depends on whether the physician based the opinion on "his or her treatment" of the injured party. Wickersham v. Ford

---

[1] Defendant only challenges Dr. Ton's causation opinions as inadmissible for failure to comply with Rule 26. See Def.'s Reply (ECF No. 27, at 7). However, Defendant also asserts "that <u>neither</u> doctor evaluated or even considered the issue of causation during the course of treating the Plaintiff," id. at 4 (emphasis added), which is one reason Defendant moves to exclude Dr. Ton under Rule 26, id. at 7. Therefore, because these arguments could equally apply to Dr. Shuff, the court analyzes both physicians together.

9

Motor Co., No. 13-cv-1192, 2016 U.S. Dist. LEXIS 131072, at *7 (quoting Marr v. Abercrombie & Fitch Stores, Inc., No. 14-cv-00123, 2015 U.S. Dist. LEXIS 79890, at *3 (E.D.N.C. June 19, 2015)). And this is so even if their causation opinion was not necessary to the treatment provided so long as it was based on information acquired during that treatment. In Wickersham v. Ford Motor Co., the District of South Carolina noted that

> [t]he fact that an opinion is "beyond" a physician's treatment, inasmuch as it is not an opinion the physician is required to make in the course of treatment, does not mean it was not based on observations made during the course of treatment. An opinion is "based on" treatment where the physician acquires the information used in forming the opinion through treatment.

Id. at *8-9 (internal citations omitted). The physician in Wickersham testified that she developed her causation opinions "based on the nature of Wickersham's injuries and the information he provided about the accident," and "[a]ll of this information was acquired during the normal course of treatment." Id. at *9. Because both Dr. Shuff and Dr. Ton based their causation opinions on their contemporaneous treatment of Plaintiff, they are not retained experts under Rule 26.

        i.    **Dr. Shuff**

Dr. Shuff possessed all the necessary information for his causation opinions during Fantauzzo's treatment, and therefore his causation testimony is "based on" such treatment. Plaintiff disclosed that Dr. Shuff relied upon his own treatment of her, as well "the past medical history provided by Ms. Fantauzzo, the history of injury provided by Ms. Fantauzzo, review of diagnostic testing, [and] exam findings consistent with lumbar radiculopathy . . . ." Interogg. Ans. ¶ (I)(10) (ECF No. 25-1, at 6). Dr. Shuff was aware of the MVA during her initial visit. Shuff Dep. 18:6-20; 50:7-17 (ECF No. 25-2). Dr. Shuff further testified that his opinion was "based on temporal association, with symptoms, clinical complaints." Id. 75:8-13 (ECF No. 25-2). He said he was "able to form" his causation opinion based on the information Fantauzzo provided and the information in her medical records. Id. 88:10-20. Therefore, even though his office notes do not

10

reflect his causation opinions, they are clearly "based on observations made during the course of treatment." Wickersham, 2016 U.S. Dist. LEXIS 131072, at *8-9.

### ii. Dr. Ton

Defendant requests that the court exclude Dr. Ton's causation opinions as those of a retained expert because (1) Dr. Ton did not consider causation until Plaintiff requested it; and (2) Dr. Ton reviewed additional records in preparing his causation opinion. See Def.'s Br. (ECF No. 25, at 20-21 n.5) (arguing that his opinions were "formed . . . after the treatment concluded, at the request of Plaintiff's counsel and following his review of additional information / documents provided by Plaintiff's counsel"). Neither renders Dr. Ton's causation opinions inadmissible.

While Dr. Ton testified that he had not been "asked about" causation prior to the litigation and had not performed a differential diagnosis, Ton Dep. 42:10-43:15 (ECF No. 25-3), Dr. Ton possessed sufficient information during treatment to render his causation opinions. Plaintiff disclosed that Dr. Ton relied upon his own treatment of her, as well "the past medical history provided by Ms. Fantauzzo, the history of injury provided by Ms. Fantauzzo, review of diagnostic testing, [and] exam findings consistent with lumbar radiculopathy . . . ." Interogg. Ans. ¶ (m)(11) (ECF No. 25-1, at 8). Dr. Ton was aware of the MVA during treatment. Ton Dep. 12:22-13:5 (ECF No. 25-3). Dr. Ton also testified that he based his opinion "on the history and the diagnostic findings . . . available to [him] at [his] very first visit[.]" Id. 49:8-11. As such, Dr. Ton opined on causation based upon information "acquired during the normal course of treatment." Wickersham, 2016 U.S. Dist. LEXIS 131072, at *9.

However, Defendant's main argument under Rule 26 is that, at the request of Plaintiff's counsel, Dr. Ton reviewed information from other medical providers "for purposes of testifying in this case." Def.'s Reply (ECF No. 27, at 7). Opinions based on information obtained outside of

11

treatment can require a treating physician to produce an expert report. See Wickersham, 2016 U.S. Dist. LEXIS 131072, at *8-9; Garris v. 933387 Ontario Ltd., No. 17-cv-38, 2018 WL 6272906, at *1 (W.D. Va. Nov. 30, 2018) (requiring a report when "information [the physician was] using in his testimony did not come from treatment . . . and was instead gathered from conversations with Plaintiffs' counsel"). During the deposition, Dr. Ton acknowledged that he had reviewed additional medical records provided by counsel. Ton Dep. 44:13-15 (ECF No. 25-3). But Dr. Ton testified that his <u>causation</u> opinions had not been influenced by these records:

> [I]f I was asked about causation, it would be based upon what she told me and . . . the diagnostic findings at the time that I saw her and during my treatment. The records that . . . I was given that were treatments beforehand would give me information to determine whether or not she had a preexisting issue . . . . <u>So nothing, prior to when I saw her, could affect causation</u> of a—in my opinion, about causation of injury in February of 2019.

Id. 43:16-44:10 (emphasis added). Therefore, the challenged opinions are not "based on" the additional records, despite their availability to Dr. Ton, and Dr. Ton is permitted to testify to causation without producing an expert report.

    **2.    The Physicians' Opinions Were Adequately Disclosed to Defendant.**

Plaintiff's interrogatory answers were also sufficient to disclose the subject matter of Dr. Shuff's and Dr. Ton's testimony, as well as their facts and opinions, as required under Rule 26. Fed. R. Civ. P. 26(a)(2)(C). For both physicians, Plaintiff's interrogatory answers contained a "summary of the facts and opinions to which" they were "anticipated to testify . . . ." Interrog. Ans. ¶¶ (l), (m) (ECF No. 25-1, at 5-9). As relevant to this motion, Plaintiff disclosed that the physicians would testify (1) that Fantauzzo "suffered an injury to her lumbar spine"; (2) that the injury was "an aggravation/exacerbation of her pre-existing age-related/degenerative findings"; and (3) that "all the symptoms . . . were due to and caused by" the MVA. Id. ¶ (l)(10) (ECF No. 25-1, at 6); id. ¶ (m)(11) (ECF No. 25-1, at 8). Both disclosures also included detailed medical

records which were produced and incorporated by reference. Id. Therefore, Plaintiff adequately disclosed that Dr. Shuff and Dr. Ton would provide the causation opinions challenged in this motion.

### 3. Any Failure to Disclose Is Substantially Justified and Harmless.

To the extent that Sperry argues that Dr. Shuff's and Dr. Ton's causation opinions were not disclosed as required under Rule 26, any failure to disclose was substantially justified and harmless. Fantauzzo did not file a separate Rule 26(a)(2)(B) signed expert report for either doctor.[2] Pl.'s Opp'n (ECF No. 26-1, at 2 n.1, 10); Def.'s Reply (ECF No. 27 n.1). Furthermore, the treating physicians did not sign the interrogatory answers, through which Plaintiff disclosed the treating physicians' causation opinions under Rule 26(a)(2)(C). See Interrog. Ans. (ECF No. 25-1). However, to the extent Sperry argues this omission amounts to a failure to disclose, the Fourth Circuit's factors in Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co. weigh in favor of finding that any error was substantially justified and harmless. See S. States Rack & Fixture, Inc., 318 F.3d at 597.

First, there is very little surprise to Sperry because the parties were able to "proceed[] with the depositions of Dr. Ton and Dr. Shuff based on the disclosure[s]" in the interrogatory answers and incorporated records. Def.'s Reply (ECF No. 27, at 1 n.1). As discussed above, the interrogatory answers disclosed the physicians' causation opinions, and defense counsel thoroughly explored causation during the depositions. In fact, defense counsel elicited significant admissions by both doctors regarding Plaintiff's serious underlying disc disease. Second, the evidence is "clearly important to the Plaintiff" in that she must establish causation as an element

---

[2] Because the court holds that neither physician was required to prepare a Rule 26(a)(2)(B) expert report, the court does not analyze whether the failure to provide that report was substantially justified or harmless.

in this case. Pl.'s Opp'n (ECF No. 26-1, at 10); see also Def.'s Br. (ECF No. 25, at 1). As regards Plaintiff's "explanation for [her] failure to disclose the evidence," S. States Rack & Fixture, Inc., 318 F.3d at 597, Plaintiff believed that Sperry's counsel had "agreed" it was "unnecessary" to provide the Rule 26(a)(2)(C) expert report as it would have been duplicative of the interrogatory answers. Pl.'s Opp'n (ECF No. 26-1, at 10); see also id. (ECF No. 26-1, at 2 n.1). Although Sperry disputes that he "agreed" to forgo the disclosure, Def.'s Reply (ECF No. 27, at 1 n.1), in light of the parties' proceeding with the deposition, it appears this was a good-faith misunderstanding, see Pl.'s Opp'n (ECF No. 26-1, at 10) (asserting that she "would have filed" such a report). As a result, there was no failure to disclose sufficient to warrant the harsh sanction of exclusion. Fed. R. Civ. P. 37(c); see also S. States Rack & Fixture, Inc., 318 F.3d at 597.

**B.     Dr. Shuff's and Dr. Ton's Opinions Are Sufficiently Reliable under <u>Daubert</u> and Federal Rule of Evidence 702 Because Their Deposition Testimony Adequately Supported the Disclosed Opinions.**

Fantauzzo has also met her burden to show that Dr. Ton's and Dr. Shuff's causation opinions are reliable such that they should not be excluded under Daubert and Rule 702. Defendant argues that the treating physicians' opinions are "speculative and unreliable" because they either did not opine on causation while providing treatment, as reflected in Fantauzzo's medical records, or because they testified to alternative causation (i.e., Dr. Shuff's testimony regarding Plaintiff's arthritis and degenerative disease). Def.'s Br. (ECF No. 25, at 18-22). As discussed below, there is sufficient indicia of reliability to permit both treating physicians to opine on causation.

First, both doctors are well qualified in their specialties and provided extensive surgical and non-surgical intervention consistent with their medical training. See Interrog. Ans. ¶¶ (l); (m) (ECF No. 25-1, at 5-7, 7-9). Sperry does not challenge their credentials or the nature of the treatment they provided. See Def.'s Br. (ECF No. 25). Second, a treating physician's causation opinion is not unreliable under Rule 702 merely because the opinion was first articulated during

14

litigation. Defendant argues that both physicians' opinions are unreliable because they "admit[ed] that [they] never evaluated or assessed the causal relationship vel non of the accident to Plaintiff's symptoms" while treating her. Def.'s Br. (ECF No. 25, at 18, 19). In discussing the reliability of a treating physician's causation opinion under Rule 702, the Wickersham court admitted the treating physician's testimony after observing:

> It is true that [the physician]'s causation opinions were, in some sense, formed for the purposes of this litigation, inasmuch as she did not need to form such an opinion to treat Wickersham. However, [the physician] possessed most, if not all, of the information she used to develop her causation opinions at the time of Wickersham's treatment, well before this litigation arose. . . . She may well have actually formed her opinions at that time and simply not discussed them.

Id. at *21 (internal citations omitted). As in that case, both physicians in this case possessed sufficient information while treating Fantauzzo to form opinions on whether the MVA caused the symptoms relating to her spinal injury, which required her later treatment, even if those opinions were not articulated or recorded in her medical records at that time. See, e.g., Shuff Dep. 88:10-20 (ECF No. 25-2); Ton Dep. 48:24-49:11 (ECF No. 25-3).

Sperry also argues that Fantauzzo's self-report of the MVA to her treating physicians is an insufficient factual basis for them to form reliable causation opinions. Def.'s Br. (ECF No. 25, at 19, 21) (citing Perkins, 626 F. Supp. 2d at 592-93). In Perkins v. United States, the court found the treating physician's testimony unreliable when his opinion was "based solely on [the plaintiff's] self report that the injuries were caused by the motor vehicle accident." Perkins, 626 F. Supp. 2d at 592. Neither physician in this case demonstrates "exclusive reliance" on Fantauzzo's self-report. Id. at 593. Rather, each physician considered many factors beyond

15

Fantauzzo's report.³ See Interrog. Ans. ¶ (l)(10) (ECF No. 25-1, at 6); id. ¶ (m)(11) (ECF No. 25-1, at 8). Furthermore, neither Dr. Ton nor Dr. Shuff "adopted" Fantauzzo's "explanation as his own opinion on causation." Perkins, 626 F. Supp. 2d at 592-93 (quoting Bowers v. Norfolk S. Corp., 537 F. Supp. 2d 1343, 1357 (M.D. Ga. 2007)). For example, Dr. Ton stated that "[t]he car accident is entirely consistent with what would cause the changes on the MRI," Ton Dep. 50:19-20, while Shuff used "what's in the records" to form his opinion, Shuff Dep. 88:10-20. Both doctors observed that the temporal proximity and changed nature of Fantauzzo's complaints from before the MVA contributed to their opinions. Shuff Dep. 75:11-13 (ECF No. 25-2) ("[T]he opinion I have is based on temporal association, with symptoms, clinical complaints."); Ton Dep. 51:24-52:25 (ECF No. 25-3) (explaining that she "didn't present" in a way that indicated a "continuation of a problem," but rather reported that after the MVA she "ha[d] this pain now," and "it [wa]s going down [her] back in both legs").

Furthermore, neither Dr. Ton nor Dr. Shuff are unreliable "hired gun" experts. In Perkins, the court excluded the treating physician's testimony because he "did not adequately investigate [the plaintiff's] relevant medical history" and "failed to consider alternative explanations for [the plaintiff's] injuries." Perkins, 626 F. Supp. 2d at 593, 594. He also "knew from the outset of treatment that he would be involved in litigation to render an expert opinion." Id. at 593 n.8. The court characterized that physician as an "infamous 'hired gun' expert" who exhibited "willful blindness" and "ignor[ed] the facts that would hinder" the lawsuit. Id. at 595. In contrast, Dr. Shuff and Dr. Ton both treated Plaintiff for her injuries before the lawsuit was filed. See Shuff Dep. 15:6-9 (ECF No. 25-2); Ton Dep. 12:22-24 (ECF No. 25-3). Dr. Shuff reviewed Fantauzzo's

---

³ The court acknowledges that the physicians' only source of information about the MVA came from the Plaintiff. See, e.g., Shuff Dep. 81:13-18 (ECF No. 25-2). However, the court interprets Perkin's concern as centered on self-reported causation, not self-reporting about the facts of a motor vehicle accident.

16

medical history, including Plaintiff's "express[ed] back pain and . . . history of fibromyalgia." See, e.g., Shuff Dep. 16:13-17 (ECF No. 25-2). Dr. Ton examined Plaintiff's records "to determine whether or not she had a preexisting issue that was either similar or dissimilar to the ones that she presented to" him. Ton Dep. 44:1-6 (ECF No. 25-3). Both physicians thus treated Fantauzzo with a genuine medical—not a legal—perspective, cf. Perkins, 626 F. Supp. at 593 n.8, and thus their opinions lack what Perkins described as the indicia of unreliable "hired gun" expert opinions.

Lastly, Sperry argues that Dr. Shuff's causation opinions are inconsistent[4] because he agreed that Plaintiff's "symptoms . . . [were] due to the progression of her advance[d] degenerative issues in her lumbar spine . . . ." Shuff Dep. 54:13-17 (ECF No. 25-2); see also id. 58:20-59:9. Sperry then characterizes Plaintiff's advanced degenerative issues as a separate cause from the MVA. See Def.'s Br. (ECF No. 25, at 18). However, this mischaracterizes Dr. Shuff's opinion that the MVA "aggravated her underlying normal age-related changes in her lower back . . . ." Pl.'s Opp'n (ECF No. 26-1, at 1-2); see also Shuff Dep. 88:10-20 (agreeing "that the motor vehicle collision aggravated, or exacerbated, her degenerative condition in her spine"). Therefore, these causes are not mutually exclusive, and there is no internal inconsistency rendering Dr. Shuff's causation opinions unreliable under Rule 702 and Daubert.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Defendant's Motion to Exclude Plaintiff's Medical Experts, Charles E. Shuff, M.D., and Martin V.T. Ton, M.D. (ECF No. 24).

---

[4] To the extent that both physicians' opinions are perceived as inconsistent because they agreed to matters raised during questioning by Defendant's counsel, these were later addressed by Plaintiff's counsel. Despite the absence of a signed expert report, Plaintiff's counsel's questioning provides a sufficient record to sustain their original causation opinions.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

November 10, 2021

18